UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF VERMONT

| | |
|---|---|
| MICHAEL J. PRATT, Administrator of the Estate of Eric J. Pratt, Plaintiff<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK, NEW ENGLAND CENTRAL RAILROAD, INC., MICHAEL E. KUJALA AND WILLIAM C. RAE, Defendants | Docket No. 2:13-cv-197 |

## STATEMENT OF UNDISPUTED FACTS

### Introduction

1.   On January 15, 2012, decedent Eric J. Pratt ("Decedent" or "Mr. Pratt") then age 15 and his friend, Kyle Shippee ("Mr. Shippee"), left Mr. Shippee's house to walk to Mr. Pratt's house.  Am. Compl. and Demand for Trial by Jury ("Am. Complaint") ¶ 7; Typed Affidavit of Kyle Shippee, ¶¶ 4-5, July 10, 2014 (Exhibit 1).

2.   Mr. Pratt's house was located on Bemis Road, on the west side of the train track owned by New England Central Railroad, Inc. ("NECR").  Vermont State Police Investigation Report, Amtrak 0070 (Exhibit 2); Pl.'s Resp. to Amtrak's First Set of Int. and Req. to Produce, ¶ 1(c) (Exhibit 3), December 13, 2013.

3.   As the boys left Mr. Shippee's house, Amtrak train 54 travelling from Washington, D.C. to St. Albans, Vermont (the "Train"), approached the Bemis Road crossing in

Vernon, Vermont (the "Crossing"). Exhibit 2 at Amtrak 0070; Handwritten Statement of Kyle Shippee, July 10, 2014 (Exhibit 4).

4. Both boys were aware of the Train's approach and decided to "beat the train." Exhibit 1 at ¶ 6

5. Mr. Shippee realized that the Train was approaching the Crossing more quickly than anticipated and ran to cross the tracks. *Id.*

6. Mr. Pratt was walking with his head down and did not look up to check on the Train's position before stepping on the tracks. *Id.*

7. He did not change his pace to avoid the Train, and Mr. Pratt walked right in front of the Train as it occupied the crossing, killing him. *Id.*; Exhibit 2 at Amtrak 0069.

## Details of the Accident

8. At approximately 5:00 p.m. on January 15, 2012, Mr. Shippee and Mr. Pratt went to Mr. Shippee's house to retrieve a video game and left there shortly thereafter to return to Mr. Pratt's house. Exhibit 1 at ¶ 4; Exhibit 2 at Amtrak 0073.

9. Mr. Shippee's house is located on Fort Bridgeman Road in Vernon, Vermont, which is also Vermont Route 142, parallel to the NECR tracks and approximately 50 yards south of Bemis Road on the east side of the Crossing. Exhibit 1 at ¶ 2.

10. Shortly after leaving Mr. Shippee's house, Mr. Shippee and Mr. Pratt heard a train horn and Mr. Shippee said to Mr. Pratt that they should "run and beat the Train." Exhibit 4.

11. Mr. Shippee observed that Mr. Pratt heard what Mr. Shippee said about beating the Train. Exhibit 1 at ¶ 6.



12. The boys wanted to cross the track ahead of the approaching train because during the previous week, a number of freight trains had stopped on the tracks just north of Bemis Road, blocking the Bemis Road crossing for an extended period of time. Exhibit 1 at ¶ 6.

13. Mr. Shippee and Mr. Pratt crossed Route 142 and approached the Crossing's railroad tracks. Exhibit 1 at ¶ 5.

14. Mr. Shippee observed Mr. Pratt look toward the oncoming Train while they were on Bemis Road approaching the railroad tracks. *Id.* ¶ 6.

15. Mr. Shippee ran to cross the track because the Train approached more quickly than he anticipated, but Mr. Pratt did not run. *Id.* at ¶ 6; January 15, 2012 Amtrak Video Recording at 4:25-4:32 (Exhibit 5).

16. Mr. Pratt trailed Mr. Shippee and as he approached the track, he did not stop or look for the Train he knew to be approaching. *Id.* at 4:25-4:32.

17. Mr. Pratt walked right in front of the Train as it travelled through the Crossing, killing him instantly. Exhibit 2 at Amtrak 0069; Exhibit 5 at 4:25-4:32.

18. According to Mr. Shippee, both he and Mr. Pratt expected the Train to be a slow-moving freight train preparing to stop, not a passenger train travelling at full speed. Exhibit 1 at ¶ 6.

19. The Train was travelling approximately 50 miles per hour immediately before the accident. Dep. of James Scott 136:25-137:4, Feb. 5, 2015 (Exhibit 6).

20. This is below the 55 miles per hour maximum authorized speed for passenger trains for that section of track. *Id.* at 137:5-13.

gravel &
shea  ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 3 -

21.     Freight trains have a maximum authorized speed of 40 miles per hour at this section of track. New England Central Railroad, Timetable No. 9, Amtrak 0196, June 20, 2010 (Exhibit 7).

22.     The train horn has five flutes, three facing forward and two facing the rear. Exhibit 6 at 64:15-20.

### The Event Recorder

23.     The lead locomotive on the Train was equipped with an event recorder, as required by federal regulations. Expert Report of Full Service Railroad Consulting, Inc., 3, February 26, 2015 (Exhibit 8).

24.     The event recorder accurately recorded various data from the Train, including its speed, distance travelled, the sounding of its horn and bells and the application of its emergency break. Exhibit 6 at 56:9-57:14; Event Recorder Data Table at Amtrak 0001-0008 (Exhibit 9).

25.     An analysis of the event recorder demonstrates that:

   a.   the engineer applied the emergency break within moments of impact as the Train went through the Crossing, Dep. of Foster Peterson 41:19-42:15 (Exhibit 10);

   b.   the event recorder reflects that the emergency brake was first suppressed at 16:00:54, Exhibit 9 at 0003;

   c.   the Train's horn sounded during 21 of the 30 seconds preceding the accident, Exhibit 9 at Amtrak 0002-0004;

   d.   the Train's horn sounded continuously for the seven seconds immediately prior to the accident, *id.*;

   e.   the Train's bell sounded for all 25 seconds preceding the accident, *id.*


gravel & shea ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 4 -

26. Based on the Event Recorder and the observations of NECR employees present at the scene the morning after the accident, the front of the Train came to a stop approximately 908 feet after the Bemis Road crossing. Exhibit 10 at 41:8-18; Exhibit 9 at Amtrak 0003.

### The Video Recording

27. The Train was equipped with a video camera mounted inside the cab, on the top, center portion of the windshield. Exhibit 2 at Amtrak 0074; Exhibit 6 at 63:17-20.

28. In the video recording captured by the Train's camera, the horn unambiguously sounds for twenty out of the thirty seconds prior to impact and continuously for the last seven seconds before impact. Exhibit 5 at 4:02-4:32.

29. From the video it is clear that a pedestrian approaching the Crossing from Route 142 had a continuous line of sight for hundreds of feet and, if paying attention, could see a train approaching from the prior crossing for a total of fifteen seconds. *Id.* at 4:15-32; photograph of crossing line-of-sight (Exhibit 26).

### Observations of Witness Michelle Penza

30. As the Train approached the Crossing, Michelle Penza was leaving her father's house, which was located adjacent to the NECR train tracks on the west side of the Crossing. Dep. of Penza 15:5-16:2, July 8, 2014 (Exhibit 11).

31. When she stopped at the Crossing, Ms. Penza thought she was so close to the tracks she would be hit by the Train but "was in such a panic that [she] wasn't capable of putting [her] car in reverse." *Id.* at 18:7-18.

32. Ms. Penza had the heater on and had the radio turned on, most likely to country western music. *Id.* at 13:11-14:2.

gravel &
shea  ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 5 -

33. Ms. Penza did not hear the horn as the Train approached the Crossing. *Id.* at 30:9-11.

## Observations of the Amtrak Crew

34. At the time of the accident, Mr. Rae was the engineer operating the lead locomotive on the Train, and Mr. Kujala was the Train's conductor. Exhibit 2 at 0070.

35. Mr. Rae has been an engineer for Amtrak since 2007. Dep. of Rae at 13:2-5, July 9, 2014 (Exhibit 12).

36. To become an engineer, Mr. Rae successfully completed eight weeks of intensive course work and eighteen months of on the job training. *Id.* at 12:22-13:1. There is no evidence that he was not trained or qualified to perform that role.

37. As he approached the Crossing on the day of the accident, Mr. Rae saw Mr. Shippee and Mr. Pratt as they approached the track, before Mr. Shippee ran across the track. *Id.* at 26:24-27:1.

38. Mr. Rae saw a car on the west side of the Crossing, saw one boy cross in front of the Train and saw the other boy approaching the Crossing. *Id.* at 20:10-17.

39. Mr. Rae was sounding the horn as Mr. Shippee crossed the track, moments before Mr. Pratt attempted to cross. *Id.* at 28:12-14.

40. Mr. Pratt continued at a steady pace and when Mr. Rae realized Mr. Pratt would not stop before stepping onto the train track or even look up, he put the Train in emergency, but it was too late. *Id.* at 29:7-24, 30:13-14.

41. Mr. Kujala has worked for Amtrak since 1989 and has been a Conductor since approximately 1993. Dep. of Kujala at 7:14-8:3, July 9, 2014 (Exhibit 13).

42. There is no evidence that he was not qualified or trained to perform that role.


gravel &
shea  ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

43.     As the Train approached the Crossing, Mr. Kujala saw a car approaching Bemis Road from the west side of the track. *Id.* at 23:10-15.

44.     Mr. Kujala estimated that he saw Mr. Pratt and Mr. Shippee approximately ¼ mile prior to the Crossing on the east side of the track. *Id.* at 25:9-20.

45.     He also observed that Mr. Pratt was walking casually and never looked up, despite the fact the horn was blowing continuously. *Id.* at 23:16-20, 24:23-25:2; 36:24-37.3.

### Plaintiff's Expert's Opinions

46.     Plaintiff has retained one expert, Jim C. Scott of Scott & Associates, Inc., an expert on train operations. *See* Pl.'s Designation of Expert Witnesses, 2, December 1, 2014 (Exhibit 14) (without accompanying exhibits).

47.     Mr. Scott offers three opinions: (1) although the engineer blew the Train's horn prior to the accident, it was not blown at the right time or in the right progression, which caused the accident; (2) a buildup of ice and snow in the three forward facing flutes caused the horn to sound muffled, which violated federal regulations and did not provide an adequate warning to pedestrians; and (3) "The engineer was operating the train in throttle 8 (wide open)" and he "never offered to reduce the throttle, thus, reducing speed of the train," nor did he "offer [] any type of braking prior to emergency brakes." Report of Scott & Assoc., Inc., 6, November 25, 2014 (Exhibit 15).

48.     According to Mr. Scott, the event recorder and video demonstrate that the Amtrak Train sounded its horn as it approached the Crossing. Exhibit 6 at 128:16-23, 157:23-25.

49.     Mr. Scott initially opined that the horn was not blown during the 4.5 seconds immediately prior to the accident, which included the moments the Train occupied the Crossing. Exhibit 15 at 5.



gravel &
shea   ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 7 -

50. Mr. Scott based this opinion on a statement in the police report, that the "train was stopped approximately one tenth of a mile north of the Bemis road crossing." *Id.* at 5; *see also* Exhibit 2 at Amtrak 0072; Exhibit 6 at 141:19-142:17.

51. According to Mr. Scott, if the stopping distance for the Train was closer to 800 feet and not the 528 feet he used in his report, then the Train would have been blowing its horn both prior to reaching the Crossing, and as it occupied the Bemis Road crossing. Exhibit 6 at 139:3-140:2, 142:9-17.

52. Mr. Scott did not speak to the state police officers who wrote the report to determine whether they measured the distance or approximated. Exhibit 6 at 140:3-10.

53. The crossing directly after the Bemis Road Crossing is approximately 700 feet north beyond Bemis Road. Exhibit 8 at 6; Exhibit 6 at 82:24-83:1 (estimating that the subsequent crossing was at least 400-500 feet beyond Bemis Road).

54. Based on the video, it is clear that the Train crossed the subsequent crossing and continued toward the box cars parked on the spur track running next to the main track. Exhibit 5 at 4:31-4:50.

55. According to the event recorder, the Train traveled 927 feet after the emergency brake was first engaged, which was immediately prior to the accident. Exhibit 8 at 6; Exhibit 10 at 41:6-22.

56. Mr. Scott opined that at the time of accident, the horn was inadequate to warn pedestrians because a buildup of ice and snow in the three forward facing flutes caused a muffling of the horn. Exhibit 15 at 5.

57. A review of the weather at each station the Train passed through reveals that on that entire route on January 15, 2012 although it was below freezing throughout the Train's



journey, no frozen precipitation fell along the route at the time the Train was travelling through that area. Weather Data Spreadsheet and supporting documents (Exhibit 16).

<u>The Crew Had No Obligation To Sound The Horn</u>

58. At all relevant times, the Bemis Road crossing was a private crossing: it is inventoried as a private road by the United States Department of Transportation, it is listed as a private road by NECR, it is marked private on the sign marking the street, the crossing is marked as private, the residents of the road maintain the road in all respects, and the town of Vernon provides no services to it. U.S. Dept. of Transportation Crossing Inventory (Exhibit 17); Exhibit 7 at 0228; Vermont State Police Photo at Amtrak 0104, 0125 (Exhibit 18); Dep. of Bryan Pratt 26:4-20 (Exhibit 19); Dep. of Dawn Pratt, 28:8-10, Aug. 21, 2014 (Exhibit 20); Dep. of Michael Pratt 18:16-22, Aug. 21, 2014 (Exhibit 21).

59. Mr. Scott has not looked into whether Bemis Road is a private road, but has no reason to believe it is a public road. Exhibit 6 at 116:11-117:16.

60. According to Mr. Scott, there is no Vermont law, federal law, federal regulation, or railroad rule that required the engineer to sound the horn prior to the Crossing. *Id.* at 76:23-77:2, 118:10-23, 134:15-17, 135:22-136:7.

61. Both the conductor and the engineer testified that they sounded the horn the same way at every crossing. Exhibit 13 at 16:22-17:6; Exhibit 12 at 22:10-13.

62. Because the Train was operating on NECR tracks, it was governed by the General Code of Operating Rules, Effective April 7, 2010, Sixth Edition, ("GCOR"). Exhibit 15 at 2.

63. Under Rule 5.8.2, engineers operating on NECR track were not obligated to sound a horn at a private crossing. GCOR, Effective April 7, 2010, Sixth Edition (Exhibit 22).


gravel & shea ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

- 9 -

64. In the event a train horn is not blowing properly, the GCOR requires the engineer to ring the train's bells throughout its journey and stop prior to each *public* crossing. *Id.* at 5.8.3.

65. Even if the horn were not functioning properly, there was no obligation to stop or change the Train's speed as it approached a *private* crossing. *Id.*

66. There is no dispute that the Train's bells were ringing consistently and its lights were on as it approached the Crossing. Exhibit 5 at 4:05-4:32; Exhibit 11 at 15:22-16:2; Exhibit 9 at Amtrak 0001-0003.

67. The horn on the Train's lead locomotive most recently passed the inspection required by the Locomotive Boiler Inspection Act on June 11, 2011. Locomotive Horn Test Data Sheet (Exhibit 23).

## The History of the Bemis Road Crossing

68. According to John Sullivan, Track Foreman of NECR, there is no history of prior accidents or "incidents" at the Crossing. Dep. of Sullivan 12:7-10, June 12, 2015 (Exhibit 24) (nothing in past 20 years).

69. NECR performed regular maintenance of the vegetation around this crossing. *Id.* at 14:8-15:12, 16:2-17:14.

70. In the past twenty years, there have not been any reports from any engineer or conductor suggesting any concern with the sight lines for the Crossing. *Id.* at 23:20-23.

71. There are no more than ten homes on Bemis Road, which has no outlet. Exhibit 20 at 23:14-26:7; Town Map (Exhibit 25).

72. For a pedestrian approaching the Crossing from Route 142, there was a clear line of sight for "easily" over a hundred feet. Exhibit 24 at 28:12-16; *see also* photograph of Crossing Line of Sight (Exhibit 26); Exhibit 5 at 4:15-32.



gravel & shea ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont 05402-0369
A PROFESSIONAL CORPORATION

73. The Brattleboro & Fitchburg Railroad company purchased the land where the Crossing sits on March 13, 1849. Volume 5 Page 635 Town of Vernon Land Records (Exhibit 27); Affidavit of Patricia C. Happy, August 27, 2015 (Exhibit 28).

74. The warranty deed conveying the property reserved a crossing at grade. Exhibit 28(A).

75. Form B is a type of track bulletin that is placed in effect to protect railroad employees or contractors when they are repairing or maintaining the track. Exhibit 22 at 0399-0400.

76. The Plaintiff has made no claim that the level of crossing protection at the Crossing was inadequate. Fourth Supp. Response to Defendant's First Set of Interrogatories, 5-7 (Exhibit 29); Exhibit 6 at 135:2-7.

Dated:    Burlington, Vermont
          August 31, 2015

                                              /s/ Robert B. Hemley
                                              Robert B. Hemley, Esq.
                                              Navah C. Spero, Esq.
                                              Gravel & Shea PC
                                              76 St. Paul Street, 7th Floor, P. O. Box 369
                                              Burlington, VT  05402-0369
                                              (802) 658-0220
                                              rhemley@gravelshea.com
                                              nspero@gravelshea.com
                                              For Defendants

gravel & shea ATTORNEYS AT LAW
76 St. Paul Street
Post Office Box 369
Burlington, Vermont  05402-0369
A PROFESSIONAL CORPORATION

- 11 -